OPINION
{¶ 1} Appellant Austin Square, Inc. d.b.a. Navarre Village Mobile Homes ("appellant") appeals the decision of the Stark County Court of Common Pleas that found its upgrade rules unreasonable, arbitrary and capricious and therefore, unenforceable against Appellee Florence Stertzbach[1]
("appellee"). The following facts give rise to this appeal.
 {¶ 2} Appellee Clarence Bennington and his late wife, Bernice Bennington, purchased the manufactured home located at 200 E. Street, Navarre, for $30,000, in appellant's manufactured home park. The park consists of 235 lots for rent, with an average monthly lot fee of $216. The Benningtons moved, into their new home, in December 1995. At the time the Benningtons moved into the park, they were not provided with a lease. Instead, park management treated them as month-to-month tenants.
 {¶ 3} After the Benningtons moved into the park, appellant revised its rules several times. Appellant made the last revisions in the spring of 2003. According to the rules, the park demanded both interior and exterior inspections, after a resident provided notice of his or her intent to sell the manufactured home, and keep it in the park. Following the inspections, the park would provide a list of repairs and/or upgrades that must be completed before the transfer of ownership would be approved.
 {¶ 4} At the end of 2000, the Benningtons considered selling their home and relocating due to the decline in their health. In January 2001, Joe Drotovick, the part-time manager of the park for the past 15 years, gave the Benningtons a list of changes that were required if they wanted to sell the home and keep it in the park. The list included the following: (1) shingled roof on a 3/12 pitched roof; (2) thermo pane windows throughout; (3) new sinks in the kitchen and bathrooms; (4) paint the shed; (5) frost-free water faucets; (6) four-inch numbers at the front of the home; and (7) smoke and fire detectors.
 {¶ 5} However, the Benningtons' plans to move were delayed due to the declining health of Mrs. Bennington. Mrs. Bennington subsequently died in July 2001. Following his wife's death, during 2001 and 2002, Mr. Bennington split his time between his home and his sister's residence. By the end of 2002, Mr. Bennington decided that he needed to sell his home because he could no longer care for himself due to his failing health.
 {¶ 6} On January 3, 2003, Mrs. Florence Stertzbach, Mr. Bennington's sister, provided the park with written notice of Mr. Bennington's intent to sell the home. In response, on January 13, 2003, co-owner of the park, Mr. Bernard, sent a letter to Mrs. Stertzbach explaining his policy on approving sales, including his list of repairs and/or upgrades and the restriction against any move into the home, by a new owner, until the repairs/upgrades have been completed.
 {¶ 7} Thereafter, Mr. Bernard performed an interior and exterior inspection of Mr. Bennington's home. On January 22, 2003, Mr. Bernard provided Mrs. Stertzbach, with a letter, indicating the following upgrades needed to be completed so the home could remain in the park following the sale. The required upgrades are as follows: (1) replace the skirting with the simulated stone or brick skirting; (2) replace the windows with thermo pane windows; (3) install an electric outlet on the north side of the home; (4) replace the existing metal shed with a wood shed clad with vinyl siding that matches the home; (5) install a frost-free faucet on the south side; (6) move the existing gas line connection to conform with Dominion East Ohio Gas requirements; (7) replace the exterior steps with wood or concrete steps; and (8) install GFI outlets in the kitchen, bath and half-bath. Albert Yoder, Jr., the owner of Krest Construction, provided Mrs. Stertzbach with an estimate, for all the upgrades, totaling $12,680.
 {¶ 8} Thereafter, on January 26, 2004, appellee filed this lawsuit challenging appellant's upgrade rules. In May 2004, a hail storm damaged the skirting and siding on appellee's home. An adjuster, from Grange Insurance, performed an inspection of the residence, evaluated the damage and issued a check in the amount of $9,947.71. Mrs. Stertzbach placed the money, in escrow, during the pendency of this litigation. In October 2004, Mrs. Stertzbach was substituted as plaintiff, to represent appellee's interests, due to his inability to proceed because of health problems. Following the commencement of this litigation, Mrs. Stertzbach disclosed the existence of the litigation to all prospective buyers. Mrs. Stertzbach has received no purchase offers.
 {¶ 9} This matter proceeded to a two-day trial, before a magistrate, on November 18, 2004. The magistrate issued her opinion, on February 15, 2005, concluding the upgrade rules, as applied to appellee's residence, are unenforceable and therefore, appellant was restrained from enforcing them. The trial court also awarded appellee damages totaling $6,872.49 and attorney's fees to be determined following a hearing by the trial court.
 {¶ 10} Appellant filed objections to the magistrate's decision on March 1, 2005. Appellee filed cross-objections, on March 11, 2005, requesting the trial court to consider additional evidence showing further damages suffered by appellee from the last day of trial through the date of the magistrate's decision. On March 18, 2005, the trial court overruled all the objections and affirmed the decision of the magistrate. Appellant timely filed a notice of appeal on April 11, 2005. Appellee filed a cross-appeal on April 21, 2005. The parties set forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT'S COMMUNITY RULES REQUIRING RESIDENTS TO MAINTAIN HOMES TO A COMMUNITY STANDARD IN ORDER TO PRESERVE THE VALUE OF EACH HOME AND THE COMMUNITY IN GENERAL WAS AN UNREASONABLE, ARBITRARY AND CAPRICIOUS RULE.
 {¶ 12} "II. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE''S (SIC) CLAIM WITHOUT PROVIDING A SUBSTANTIVE BASIS FOR FINDING THAT COMMUNITY RULES REQUIRING MAINTENANCE OF A HOME TO COMMUNITY STANDARDS AT THE TIME OF SALE WERE UNREASONABLE, ARBITRARY AND CAPRICIOUS.
 {¶ 13} "III. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S ATTORNEY FEES WHEN APPELLANT WAS ACTING IN GOOD FAITH IN ATTEMPTING TO PRESERVE THE VALUE OF HIS COMMUNITY AND THAT OF THE COMMUNITY'S HOMEOWNERS THROUGH RULES FOR WHICH THERE HAVE BEEN NO JUDICIAL GUIDANCE."
 Cross-Appeal I. {¶ 14} "I. THE TRIAL COURT ERRED IN FAILING TO ACCEPT AND REVIEW ADDITIONAL EVIDENCE REGARDING ADDITIONAL DAMAGES SUFFERED BY CROSS-APPELLANT."
 I {¶ 15} In its First Assignment of Error, appellant maintains the trial court erred in determining that its upgrade rules requiring residents to maintain homes to a community standard, in order to preserve the value of each home and the community in general, are unreasonable, arbitrary and capricious. We disagree.
 {¶ 16} The magistrate's decision concluded appellant's upgrade rules were unreasonable, arbitrary and capricious based upon the following findings in its conclusions of law. First, the magistrate determined appellant's failure to tender a lease, at the initiation of appellee's residency, and its failure to tender lease extensions deprived appellant of claiming a contractual justification for the frequent and onerous rule changes. Magistrate's Decision, Feb. 15, 2005, Conclusions of Law, at ¶ 14.
 {¶ 17} Second, the magistrate found the upgrade rules promulgated by appellant failed to connect objective standards to the actual condition of the manufactured home. Id. at ¶ 15. As an example, the magistrate referred to the requirement of thermo pane windows where there may not be anything wrong with the windows currently in the manufactured home.
 {¶ 18} Third, the magistrate referred to our prior decision in Freyermuth v. Navarre Village Homes Austin Square, Inc.
(Jan. 24, 2000), Stark App. No. 1999CA00187, wherein we held that a rule prohibiting units older then twelve years to remain, in the village, without written consent of the management, violated R.C. 3733.11(H)(1) and (2), which prohibits a park operator from doing the following:
 {¶ 19} "(1) Deny any owner the right to sell the owner's manufactured home within the manufactured home park if the owner gives the park operator ten days' notice of the intention to sell the home;
 {¶ 20} "(2) Require the owner to remove the home from the manufactured home park solely on the basis of the sale of the home;"
 {¶ 21} The magistrate concluded that if the upgrades were truly necessary, for the alleged health and safety reasons proffered by appellant, they should go into effect across the board, for all residents. Magistrate's Decision, Feb. 15, 2005, Conclusions of Law, at ¶ 18. The magistrate determined appellant is simply attempting to find a way around the prohibition against its previous use of an arbitrary rule to force older homes out of the park. Id.
 {¶ 22} Fourth, the magistrate concluded appellant arbitrarily enforced the new rules. Id. at ¶ 19. Finally, the magistrate noted that appellant may address decrepit or poorly maintained homes through a thirty-day notice under R.C. 3733.13 and eviction proceedings under Chapter 1923. Id. at ¶ 20.
 {¶ 23} In support of its argument that the trial court erred in concluding the community rules are unreasonable, arbitrary and capricious, appellant refers to the fact that condominium and homeowner's associations are permitted to require their residents to conform to community standards. Appellant cites the cases ofEquity Inns Partnership, L.P. v. Yun (Oct. 28, 1999), Cuyahoga App. No. 74160 and High Point Assoc. v. Salvekar (July 7, 1994), Cuyahoga App. No. 65725, in support of this argument. In the Equity Inns Partnership case, the Eighth District Court of Appeals held the defendant defaulted on a lease by failing to make improvements to property as required under the terms of the lease. In High Point Assoc., the Eighth District Court of Appeals found the defendants violated a recorded association restriction by constructing a fence at their newly purchased residence.
 {¶ 24} We find both cases distinguishable from the case sub judice because neither of the cases concern the enforcement of upgrade rules at a manufactured home park. Instead, the cases cited by appellant deal with the enforcement of deed restrictions and contractual provisions of a lease agreement. As such, these decisions are not persuasive as applied to our analysis of appellant's First Assignment of Error.
 {¶ 25} Appellant next argues that R.C. 3733.11(C) requires manufactured parks to promulgate rules. This statute provides:
 {¶ 26} "(C) A park operator shall promulgate rules governing the rental or occupancy of a lot in the manufactured home park. The rules shall not be unreasonable, arbitrary, or capricious. A copy of the rules and any amendments to them shall be delivered by the park operator to the tenant or owner prior to signing the rental agreement. A copy of the rules and any amendments to them shall be posted in a conspicuous place upon the manufactured home park grounds."
 {¶ 27} Appellant maintains there is no statute that permits a park resident to avoid his or her duty to comply with the rules and the fact that it did not provide appellee with a lease agreement also does not negate this obligation to comply with the rules.
 {¶ 28} Third, appellant contends the current rules focus on the condition of the manufactured home and not the age of the home and were amended in response to this court's decision inFreyermuth. Fourth, appellant maintains the current park rules are intended to preserve the value of not only the park, but all of the homes within the park. Fifth, appellant refers to the testimony of appellee's expert, Dwayne Flickinger, and argues that appellee would make a reasonable profit after making the requested upgrades because the value of the home, with upgrades, would be $23,500. Finally, appellant argues that at the time of appellee's notification to sell the home, the amended park rules were in effect and appellee had been give notice of the rules.
 {¶ 29} As in the Freyermuth case, in the case sub judice, appellant argues it has the right to promulgate any rules as long as they are reasonable and not arbitrary. See Friendly Villagev. Duty (1992), 75 Ohio App.3d 555, 558. In the FriendlyVillage case, the court found a regulation pertaining to additions to manufactured homes was reasonable because it had a rational basis and was enforced equitably. However, in the matter currently before the Court, the record indicates appellant arbitrarily enforced the rules based upon the following testimony presented at trial.
 {¶ 30} Mr. Burt Yoder testified as follows concerning the required thermo pane windows.
 {¶ 31} "Q. * * * [H]ave you had a chance to look at the windows at 199 E Street?
 {¶ 32} "A. I did.
 " * * * {¶ 33} "Q. How did those windows compare with the windows at 200 E Street [appellee's residence]?
 {¶ 34} "A. They are similar windows.
 {¶ 35} "Q. So the ones at 199 haven't been converted over to thermo pane?
 {¶ 36} "A. That's correct.
 {¶ 37} "Q. And that property was actually being sold in early 2001, that's when you did the work on it before?
 " * * * {¶ 38} "A. In the winter — yeah, it would have had to be '01.
 {¶ 39} "Q. So the windows that are in 199 E is (sic) the same as the windows in 200?
 {¶ 40} "A. Correct.
 {¶ 41} "Q. Neither of them are thermo pane windows?
 {¶ 42} "A. Correct." Tr. Vol. I at 149-150.
 {¶ 43} Florence Stertzbach also testified concerning the rule regarding thermo pane windows and the fact that the rule was not consistently enforced.
 {¶ 44} "Q. Now, we've heard Mr. Yoder testify that your brother's windows are identical to the next door number, 199 E?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. Were you aware of that at the time that you received this list?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Did that have an impact on your decision to make improvements?
 {¶ 49} "A. Certainly did.
 {¶ 50} "Q. Why?
 {¶ 51} "A. Because they didn't have thermo pane windows and they sold the place, they sold their home.
 {¶ 52} "Q. Do you know of any other recent sales where the homeowner didn't have to replace their current windows with thermo pane windows?
 {¶ 53} "A. Ah, yes.
 {¶ 54} "Q. Where, who would that be?
 {¶ 55} "A. Well, ah, one would be Mr. Sinfield.
 {¶ 56} "Q. Mr. Sinfield was selling the home from his deceased mother's estate?
 {¶ 57} "A. From his mother. Clair Sinfield was his mother. And it was, I forget the — I think, I think it was 203 C Street.
 {¶ 58} "Q. And he didn't have to put in new thermo pane windows?
 {¶ 59} "A. No." Tr. Vol. II at 24-25.
 {¶ 60} Finally, Darla Engel, a former resident of the park, testified concerning the replacement of steps.
 {¶ 61} "Q. * * * Tell me about the steps. Were those replaced before you moved in?
 {¶ 62} "A. No.
 {¶ 63} "Q. The park still allowed you to move in even though there wasn't a change over?
 {¶ 64} "A. Absolutely." Id. at 234.
 {¶ 65} Although the upgrade rule regarding the replacement of fiberglass steps, with wood steps, was not enforced against the previous owner of Ms. Engel's manufactured home, Ms. Engel testified that when she sold her home and moved from the park, she was required to replace the steps. Id. at 238-239.
 {¶ 66} Therefore, unlike in the Friendly Village case, where the rule pertaining to the additions to manufactured homes was enforced equitably, in the matter currently before the Court, appellant did not equitably enforce the upgrade rules. Instead, the record establishes that some residents were not required to comply with the rules prior to selling their manufactured home. Accordingly, we agree, with the magistrate's conclusion, that the rules pertaining to the upgrade requirements are unreasonable, arbitrary and capricious due to the selective enforcement of these rules.
 {¶ 67} In reaching this conclusion, we recognize that R.C.3733.11(D) permits a park operator to establish rules concerning skirting. This statute provides, in pertinent part:
 {¶ 68} "* * * The park operator may determine by rule the style or quality of skirting, equipment for tying down homes, manufactured or mobile home accessories, or other equipment to be purchased by an owner from a vendor of the owner's choosing, provided that the equipment is readily available to the owner. * * *"
 {¶ 69} Although a park operator is allowed to regulate the style or quality of skirting, in the case sub judice, we find, as we did in the Freyermuth case, that the enforcement of the upgrade rules, including the skirting rule, at the time of sale, violates R.C. 3733.11(H)(1) and (2).
 {¶ 70} "(2) Require the owner to remove the home from the manufactured park solely on the basis of the sale of the home;"
 {¶ 71} According to the upgrade rules, the failure to comply with the rules would deny the owner of a manufactured home the right to sell the home, within the park, and require that the owner remove the manufactured home solely as a result of the sale. Such a result is in violation of R.C. 3733.11(H)(1) and (2).
 {¶ 72} Accordingly, appellant's First Assignment of Error is overruled.
 II {¶ 73} Prior to addressing the argument set forth in appellant's Second Assignment of Error, we note that the Second Assignment of Error on page 5 of appellant's brief differs from the Second Assignment of Error set forth on page 19 of appellant's brief. We will address appellant's Second Assignment of Error, as stated on page 19 of its brief, since this assignment of error is accompanied by an argument.
 {¶ 74} In this assignment of error, appellant claims the trial court erred in failing to identify the manner in which it could establish community rules which would serve to maintain the appearance of the manufactured homes and therefore, preserve the value of the entire community. We disagree.
 {¶ 75} Appellant argues the trial court should have provided some guidance, to the manufactured home industry, identifying the manner in which it could establish community rules that would maintain the appearance and value of the community. Appellant is dissatisfied with the trial court's conclusion that the park can address decrepit or poorly maintained homes through the use of procedures provided for in R.C. 3733.13 and Chapter 1923. See Magistrate's Decision, Feb. 15, 2005, Conclusions of Law, at ¶ 20. Appellant further maintains that as a result of this lack of guidance, manufactured homes cannot be improved or maintained.
 {¶ 76} We find the trial court properly declined to formulate rules for the manufactured home industry. According to R.C.3733.11(C), it is the park operator's duty to promulgate rules governing the rental or occupancy of a lot in the manufactured home park. The trial court's duty is merely to determine whether the rules established by the park operator are unreasonable, arbitrary or capricious. Thus, the trial court properly declined to promulgate rules for the operation of appellant's park.
 {¶ 77} Appellant next argues the trial court erred when it focused on parts of the manufactured home as opposed to the home's overall condition as it relates to the community as a whole. It was necessary, for the trial court, to focus on the parts because appellant's own rules pertain to the parts of the home as opposed to the overall condition of the home. Further, R.C. 3733.11(D) specifically permits a park operator to focus on parts concerning the style or quality of skirting, equipment for tying down homes, and manufactured or mobile home accessories.
 {¶ 78} However, in the case sub judice, appellant's attempt to regulate skirting violated R.C. 3733.11(H)(1) and (2) because appellee would be required to remove the home, from the park, because the home was sold without replacing it with the required skirting. If the skirting on the manufactured home in question is in violation of park rules, due to its condition as the result of a hail storm, appellant may follow the statutory procedure outlined in R.C. 3733.13 to remedy the situation.
 {¶ 79} Appellant further contends the park's rules are similar to restrictive covenants because both are for the purpose of preserving a certain community standard. We do not agree with this comparison. Restrictive covenants are contained in a property owner's deed. Real covenants are said to "run with the land"; that is, they are enforceable as between successors in interest to the dominant and servient estates. Peto v. Korach
(1969), 17 Ohio App.2d 20, 25. In contrast, the rules promulgated by appellant are not part of a deed nor do they "run with the land." Further, the rules are subject to change by the park operator at any time. Another notable distinction is that real covenants are not used to require repairs, on real property, at the time of the sale of the property. Instead, the purpose of real covenants is to maintain a certain community standard, at all times, by regulating the development of property. Real covenants do not require a property owner to make repairs to his or her real property before they sell it and move.
 {¶ 80} Finally, appellant challenges the trial court's finding that the community standards are the personal preferences of Mr. Ralph Bernard, co-owner of the park. At trial, Mr. Bernard testified the community standards the upgrade rules are intended to promote are not standards identified by the park residents, but are instead his own personal standards. Tr. Vol. 1, Nov. 18, 2004, at 43. The magistrate correctly found that the rules promulgated by Mr. Bernard did not operate so as to consider the overall condition of the manufactured home or to what extent existing parts of the home were in need of repair. Rather, as testified to by Mr. Bernard himself, the rules were the result of his own personal standards based upon HUD requirements.
 {¶ 81} Accordingly, we conclude the trial court did not err when it declined to identify the manner in which appellant could establish community rules.
 {¶ 82} Appellant's Second Assignment of Error is overruled.
 III {¶ 83} In its Third Assignment of Error, appellant contends the trial court erred when it awarded appellee attorney fees because it acted in good faith by attempting to preserve the value of the park. We disagree.
 {¶ 84} In Ohio, an award of attorney fees must be predicated on statutory authorization or upon a finding of conduct which amounts to bad faith. Motorists Mut. Ins. Co. v. Brandenburg,72 Ohio St.3d 157, 158, 1995-Ohio-281, citing Vance v.Roedersheimer (1992), 64 Ohio St.3d 552, 556. In the case sub judice, the magistrate's award of attorney fees was based upon statutory authorization pursuant to R.C. 3733.11(I).
 {¶ 85} This statute provides as follows:
 {¶ 86} "(I) If the park operator violates any provision of divisions (A) to (H) of this section, the tenant or owner may recover actual damages resulting from the violation, and, if the tenant or owner obtains a judgment, reasonable attorneys' fees, or terminate the rental agreement."
 {¶ 87} We will not disturb a trial court's determination to grant or deny a request for fees absent an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The magistrate's decision awarding appellee attorney fees was not an abuse of discretion because appellant violated R.C. 3733.11(C), (H)(1) and (H)(2). Thus, there was no need for the magistrate to determine whether appellant acted in bad faith.
 {¶ 88} Appellant's Third Assignment of Error is overruled.
 Cross-Appeal I {¶ 89} In the cross-appeal, appellee maintains the trial court erred in failing to accept and review additional evidence regarding additional damages suffered by her. We disagree.
 {¶ 90} The additional damages referred to by appellee include lot rent, utilities and taxes that were incurred after the completion of the two-day trial. According to appellee, these damages total $901.82. As a result of these additional damages, appellee proffered proposed finding of fact #92 which reads as follows: "Mr. Bennington has continued to incur similar additional expenses from the date of trial to the present of 901.82 and he will continue to incur such expenses until he is permitted to sell the home." Appellee also proposed conclusion of law #22, which states: "Plaintiff is awarded the damages set forth in the Plaintiff's Exhibit 22 and Plaintiff's Supplemental Exhibit 28."
 {¶ 91} In addition to the above proposed findings of fact and conclusions of law, appellee also filed cross-objections on March 11, 2005, specifically raising the issue of additional damages and requesting the trial court to consider the supplemental evidence. On March 18, 2005, the trial court issued its judgment entry overruling the objections filed by both appellant and appellee and approving the magistrate's decision.
 {¶ 92} On cross-appeal, appellee argues the trial court should have considered the additional evidence and additional damages pursuant to Civ.R. 53(E)(4)(b), which provides:
 {¶ 93} "(b) Disposition of objections. The court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."
 {¶ 94} Appellee requests that we remand this matter, to the trial court, for the court to consider the additional evidence in proper compliance with the above rule. According to the trial court's judgment entry approving the magistrate's decision, the trial court did not refuse to consider appellee's cross-objections which contained the new evidence regarding additional expenses incurred by appellee. Rather, the trial court specifically indicated that appellee filed a limited objection to the magistrate's decision, which the trial court overruled, in addition to overruling appellant's objections. There is no evidence, in the record, that the trial court refused to consider the additional evidence. Instead, the trial court acknowledged the additional evidence contained in appellee's cross-objection and chose to overrule it. As such, the trial court complied with Civ.R. 53(E)(4)(b).
 {¶ 95} Appellee's sole assignment of error on cross-appeal is overruled.
 {¶ 96} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Boggins, P.J., concurs.
Hoffman, J., concurs in part and dissents in part.
[1] On October 13, 2004, the trial court substituted Florence Stertzbach as the plaintiff in this matter due to the failing health of Clarence Bennington.