[Cite as *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*, 2016-Ohio-8427.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| TROY OAKS HOMES & RESIDENTIAL CLUB, INC., | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2016-G-0081** |
| | : | |
| - vs - | : | |
| | : | |
| JOHN SOKOLOWSKI, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

Civil Appeal from the Chardon Municipal Court, Case No. 2015 CVG 00677.

Judgment: Affirmed.

*Jeffrey T. Orndorff,* Jeffrey T. Orndorff Co., L.P.A., 117 South Street, #110, P.O. Box 1137, Chardon, OH 44024-5137 (For Plaintiff-Appellee).

*A. Pearce Leary,* 100 Park Place, Chagrin Falls, OH 44022-4442 (For Defendants-Appellants).


CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants, John Sokolowski and Laura Sokolowski, appeal the judgment of the Chardon Municipal Court in favor of appellee, Troy Oaks Homes & Residential Club, Inc., on its complaint in forcible entry and detainer against appellants. At issue is whether the trial court erred in ordering appellants to remove their manufactured home from Troy Oaks' property. For the reasons that follow, we affirm.

{¶2} Troy Oaks owns real property in Troy Township on which it operates a manufactured home community. Appellants own a manufactured home, which is located on a lot they leased from Troy Oaks. On September 11, 2015, Troy Oaks filed a complaint in forcible entry and detainer against appellants due to their violation of a provision in Troy Oaks' rules. The complaint alleged appellants failed to obtain Troy Oaks' approval, as required by its rules, before installing a metal roof on their home, which did not comply with Troy Oaks' construction standards. Appellants filed an answer denying the material allegations of the complaint and a counterclaim seeking declaratory judgment as to the interpretation and validity of Troy Oaks' rules.

{¶3} The case was scheduled for trial before the magistrate. Prior to trial, it was disclosed that appellants had moved out of their manufactured home and left it behind. Thus, the case proceeded on Troy Oaks' prayer for an order requiring appellants to remove their home from Troy Oaks' property.

{¶4} Troy Oaks has been operating its manufactured home community since 1974, and has 230 mobile homes on the property. Residents can either purchase manufactured homes from Troy Oaks or they can purchase them from outside vendors and then move them to Troy Oaks.

{¶5} In 1984, Troy Oaks adopted minimum construction standards for manufactured homes that would be permitted in the community. The standards specified only shingle-style roofs.

{¶6} In 2001, Troy Oaks adopted a policy pursuant to which a prospective lessee who bought a manufactured home from an outside vendor could bring the home to Troy Oaks and rent a lot if the lessee satisfied Troy Oaks' standards for

2

manufactured homes. According to the policy, the outside vendor was required to submit specifications for the prospective lessee's manufactured home to demonstrate compliance with Troy Oaks' policies.

{¶7} In April 2002, appellant, Laura Sokolowski, then Swink, through her vendor, applied to move her home to Troy Oaks. Ms. Swink's application included a list of specifications for her home, which indicated the roof of the home had shingles. Troy Oaks accepted Ms. Swink's manufactured home based on those specifications.

{¶8} Troy Oaks also adopted rules governing the operation of its manufactured home community. At all relevant times, Troy Oaks' rules provided, at p. 8: "<u>Exterior alterations</u> * * * or changing of any exterior aspect of your home IS NOT PERMITED unless approval is obtained in writing from the management in advance." (Emphasis sic.) The rules further provided, at p. 21, that all manufactured homes must meet Troy Oaks' minimum construction standards, which, as noted, specified shingle-style roofs.

{¶9} On May 18, 2002, Troy Oaks and Laura Swink entered a written lease. The lease provided, at pp. 4-5, that the rules were incorporated by reference into the lease, and obligated Ms. Swink to comply with them. The lease, at p. 7, also required her not to "make any repairs or alterations to the exterior of the home * * * without the prior written consent of Troy Oaks." The lease contained a clause, signed by Ms. Swink, stating that she had read and accepts Troy Oaks' rules. Thus, Ms. Swink acknowledged she was aware of the rules when she signed the lease.

{¶10} Tom Learn, general manager of Troy Oaks, testified the purpose of the prior-approval rule is to avoid the kind of conflict that arose here where residents construct improvements that do not conform to Troy Oaks' standards.

3

{¶11} Ms. Swink's first written lease expired on June 30, 2003. On July 1, 2003, she and Troy Oaks entered a second written lease for the same lot. The second lease contained the identical provisions as the first. The second lease expired on June 30, 2004. Thereafter, she continued to lease the lot on a month-to-month basis on the same terms set forth in the written leases.

{¶12} Meanwhile, in 2007, Ms. Swink married appellant, John Sokolowski, and he became a permitted occupant of the property with Troy Oaks' consent. Ms. Sokolowski testified that, after their marriage, appellants made various changes to the exterior of their home and yard. Ms. Sokolowski admitted she never obtained permission for any of the changes they made. Moreover, there is no evidence Troy Oaks was aware of any of these changes, except appellants' construction of a carport regarding which Troy Oaks became aware after construction began.

{¶13} Thereafter, on July 20, 2015, unknown to Troy Oaks, appellants had a metal roof installed on their home. Lois Thalman, Troy Oaks' president, testified she became aware that the roof was being installed when another resident called her and asked if she knew about it.

{¶14} Ms. Thalman called appellants' home and asked Ms. Sokolowski if she was putting a metal roof on the home. Ms. Sokolowski said that she was; that it was almost completed; and that she would be paying the contractor in a half-hour. Ms. Thalman told Ms. Sokolowski this was a problem because Troy Oaks does not allow metal roofs on the residents' homes.

{¶15} Ms. Thalman said Troy Oaks' objection to a metal roof is that it would interfere with the consistent appearance of other roofs in the community, all of which are

shingle-style.  She said it is in the best interests of all residents to have shingle roofs because the community thus presents itself as being well-maintained, which, in turn, keeps up the value of all the residents' homes.

{¶16}  Ms. Thalman testified that on or about July 24, 2015, Troy Oaks mailed appellants a notice of violation.  The notice said appellants had committed a material violation of Troy Oaks' rules by not conferring with Troy Oaks regarding their intent to alter the exterior of their home, resulting in the installation of a roof with materials unacceptable to Troy Oaks and inconsistent with the roofing materials on other homes in the community.  The notice provided that unless appellants remedied the violation by August 30, 2015, the rental agreement would terminate and eviction proceedings may be brought against them.  Appellants stipulated they received the 30-day notice as required by statute.

{¶17}  On August 12, 2015, Appellant, John Sokolowski, advised Troy Oaks in writing that appellants were obtaining estimates for replacement of the roof.  Ms. Thalman said she attempted to obtain appellants' voluntary compliance with the rules; however, they did not remove the metal roof by August 30, 2015.  As a result, on September 3, 2015, Troy Oaks served them with a three-day notice to vacate the property by September 9, 2015.

{¶18}  Appellants moved out of the home on September 9, 2015, but they have failed to remove their home from Troy Oaks.

{¶19}  Mr. Learn testified that appellants had recently provided a list of 13 things they had done to the exterior of the home without seeking advance approval.  These included construction of a carport; planting flowers; installing a cable tv satellite; staining

5

concrete; installing a white fence; and replacing a mailbox, a bathroom window, and back doors. Mr. Learn said that while appellants did not seek prior approval for these projects, Troy Oaks did not take any action when he learned about them because the changes would have been allowed; the only change that was not was the installation of the metal roof.

{¶20} Ms. Sokolowski testified that, although she knew the lease required her to consult with Troy Oaks about alterations to the exterior of the home and that she was not to make any changes without Troy Oaks' prior approval, she chose not to seek Troy Oaks' approval before installing the metal roof because she never did before.

{¶21} Following the trial, the magistrate issued his decision finding that appellants failed to comply with the contractual lease provision to secure Troy Oaks' approval before installing a metal roof and that appellants committed a material violation of Troy Oaks' rules for the operation of the property. The magistrate found in favor of Troy Oaks, ordering appellants to remove the manufactured home or the metal roof by January 25, 2016. The magistrate found appellants liable for any unpaid rents through the date of removal of the manufactured home per the parties' rent schedule of $295/month. Further, the magistrate denied appellants' counterclaim.

{¶22} Appellants filed objections to the magistrate's decision and Troy Oaks filed responses to the objections. The trial court overruled appellants' objections and adopted the magistrate's decision in favor of Troy Oaks on its complaint and on appellants' counterclaim. On appellants' motion, the court stayed enforcement of the judgment pending appeal.

6

**{¶23}** Appellants appeal the trial court's judgment, asserting four assignments of error. The first two are related and allege:

**{¶24}** "[1.] The trial court erred in basing its decision on a breach of lease and the no-waiver provision of the lease.

**{¶25}** "[2.] The trial court erred in relying on 'the minimum construction standards of the association."

**{¶26}** This case involves three standards of review. Recently, this court in *In re Estate of Eyrich*, 11th Dist. Trumbull No. 2011-T-0002, 2016-Ohio-7165, ¶17, stated:

> **{¶27}** In general, "[t]he abuse of discretion standard is * * * the appropriate * * * standard to apply when reviewing a trial court's adoption of a magistrate's decision." *Harkey* [*v. Harkey,* 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027,] ¶47. However, an appellate court applies a manifest-weight standard of review when reviewing a trial court's findings of fact * * *. *Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419, ¶12; *Patterson v. Patterson*, 3d Dist. Shelby No. 17-04-07, 2005-Ohio-2254, ¶26.

**{¶28}** Further, the determination of whether non-compliance with a contract is material so as to constitute a breach of contract is a mixed question of fact and law. *Ohio Educ. Ass'n v. Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079, ¶12. Appellate review of a mixed question of law and fact requires an appellate court to give deference to a trial court's factual findings if they are supported by competent, credible evidence, and to independently review whether the trial court properly applied the law to the facts. *Id.*

**{¶29}** A manufactured home park operator is required to promulgate rules governing the rental of a lot in the manufactured home park. R.C. 4781.40(C). Further, a resident of a manufactured home park, who is a party to a rental agreement, must comply with the rules of the park. R.C. 4781.39(A)(3). A park operator may bring an

7

eviction action if the resident is in violation of a rule of the park. R.C. 4781.37(A). R.C. 4781.45 provides that if a resident commits a "material" violation of the rules, the park operator may deliver a written notice of the violation to the resident containing a description of the violation and a statement that the rental agreement will terminate in 30 days after receipt of the notice unless the resident remedies the violation.

{¶30} In addition, R.C. 1923.02(A)(10) provides that a forcible entry and detainer action may be filed "[a]gainst manufactured home park residents who have * * * breached the terms of a rental agreement with a park operator." R.C. 1923.04 provides that a party desiring to file an eviction action under this chapter must notify the adverse party to leave the premises three or more days before beginning the action.

{¶31} Appellants concede that Troy Oaks was authorized by R.C. 4781.37(A) to bring this eviction action based on their alleged violation of Troy Oaks' rule requiring prior approval before making any alteration to the exterior of their manufactured home. Further, appellants concede Troy Oaks' 30-day notice and its three-day notice alleged a material rules violation. However, appellants argue the trial court erred in basing its judgment on a breach of the parties' lease because this action was commenced based on a rules violation, not a breach of the lease. They argue that if they had known the court was going to base its decision on a breach of the lease, they would have asserted contractual defenses, such as Troy Oaks' alleged waiver of the right to enforce the prior-approval rule.

{¶32} However, the complaint alleged that Troy Oaks' rules were incorporated by reference into the lease (which was attached to the complaint) and that appellants failed to comply with Troy Oaks' rule requiring residents to seek prior approval. Thus, in

8

addition to alleging a violation of the subject rule, the complaint essentially alleged a breach of the lease. As a result, appellants were on notice that Troy Oaks' claim was based on both a rules violation and a breach of the lease. Thus, if appellants wanted to assert contractually-based defenses, they were on notice of their obligation to do so.

{¶33} In any event, appellants concede that Troy Oaks presented "some evidence" of appellants' breach of the lease and that they did not object to it at trial. Appellants also presented evidence in support of a waiver defense, which, as appellants concede, is a contract-based defense. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence * * * may be made upon motion of any party at any time, even after judgment." Civ.R. 15(B). Thus, even if Troy Oaks had not alleged a breach of the lease, they would have been entitled to so amend the complaint.

{¶34} Next, appellants argue the trial court erred in finding they failed to comply with the shingle-style roof requirement because that requirement is only contained in Troy Oaks' minimum construction standards, not the rules, and, according to appellants, they are only required to comply with the rules.

{¶35} However, Troy Oaks' violation notices and complaint alleged a violation of the prior-approval rule. The fact that Troy Oaks' minimum construction standards specify shingle roofs for its manufactured homes was offered as evidence to show that appellants' rule violation was material because it resulted in the installation of a roofing material that was not authorized by Troy Oaks' requirements. Appellants were on

9

notice of the existence of these construction standards because the rules book, at p. 21, provides that "Troy Oaks has established a set of minimum construction standards for all homes in our community" and "[n]o homeowner may * * * have a home * * * in Troy Oaks unless it meets those minimum standards." Further, the fact that every other manufactured home at Troy Oaks has shingle-style roofs also provided notice that such roofs were required.

{¶36} Contrary to appellants' argument that the rules book should have mentioned the shingle-roof requirement, Mr. Learn said that if Troy Oaks included all the construction standards in the rules book, that would have made it hundreds of pages long.

{¶37} The Sixth District, in *Friendly Village v. Duty*, 75 Ohio App.3d 555 (6th Dist.1992), rejected an argument similar to appellants'. The resident there argued that the park rules should have included the specific reasons for approving or denying an exterior home addition, rather than a general rule requiring prior approval to ensure compliance with park requirements. The Sixth District stated:

> {¶38} "It is no answer that the * * * guidelines [prohibiting an addition to the back of a manufactured home] are not written in the park rules and regulations. The rules and regulations are not intended to be, nor should they be, detailed zoning codes that must anticipate every alteration or construction issue that might arise in a mobile home park community. A reasonable amount of discretion must be left to the park operator to determine what additions or alterations may be appropriate for its particular community, so long as the discretion is not exercised arbitrarily or discriminatorily, forms of discriminatory abuse not present here." *Id.* at 559, quoting the trial court.

{¶39} Similarly here, appellants argue the rules book should have said that all roofs must be shingled and that metal roofs are not allowed. However, as the Sixth

10

District in *Friendly Village* stated, there is no requirement that the rules book anticipate every alteration or construction issue that might result, and Troy Oaks had the discretion to determine what alterations were appropriate in the community.

**{¶40}** We hold the trial court did not err in concluding appellants committed a material rule violation and also breached the parties' lease agreement.

**{¶41}** Appellants' third and fourth assigned errors are related and thus considered together. They allege:

**{¶42}** "[3.] The trial court erred in failing to find that the rule requiring prior written approval from management for any exterior alteration was unreasonable, arbitrary, or capricious.

**{¶43}** "[4.] The trial court erred in relying on the no-waiver lease provision to justify the selective enforcement of the subject park rule."

**{¶44}** Appellants argue that Troy Oaks' prior-approval rule is unreasonable because it would require a resident to seek approval for every conceivable alteration to the home's exterior.

**{¶45}** As noted above, R.C. 4781.40(C) provides that a manufactured home park's rules must not be unreasonable, arbitrary, or capricious.

**{¶46}** This court has stated that a manufactured home park operator has a legitimate interest in maintaining the quality, aesthetics, and safety of its park. *White v. Superior Mobile Homes*, 11th Dist. Trumbull No. 98-T-0011, 1999 Ohio App. LEXIS 5942, *12 (Dec. 10, 1999); *Czerwonko v. Sahara Mobile Home Park & Sales, Inc.*, 137 Ohio App.3d 266, 269 (11th Dist.2000).

11

{¶47} The Sixth District in *Friendly Village*, *supra*, held that a rule quite similar to the one at issue here was not unreasonable, arbitrary, or capricious. The rule at issue in *Friendly Village* provided: "*Any changes* in home size, space arrangement, home additions, or attachments *to the exterior of the home MUST first be approved* by the Community Manager to ensure accordance with community requirements * * *." *Id.* at 556-557. (Emphasis added.) The resident in *Friendly Valley* violated the prior-approval rule, resulting in the installation of an addition to the back of the manufactured home, which violated the park's guidelines.

{¶48} The Sixth District held the prior-approval rule at issue in *Friendly Village* was not unreasonable, arbitrary, or capricious because there was no evidence Friendly Village's rule was unreasonable. *Id.* at 558. Specifically, there was no evidence Friendly Village's reason for denying the resident permission to construct the addition was unreasonable because its manager testified an addition is not permitted to the back of a manufactured home to prevent an intrusion into the neighbor's front yard. *Id.*

{¶49} Similarly, Ms. Thalman testified that requiring a consistent roofing material on all manufactured homes in the park benefits all homeowners in the community by keeping up the value of their homes.

{¶50} Further, contrary to appellants' argument, only a "material" rule violation can serve as the basis for termination of a rental agreement. R.C. 4781.45. Moreover, Troy Oaks' notices of violation and complaint alleged a "material" rules violation. In the analogous context of a breach of contract, "[a] material breach occurs when a party violates a term essential to the purpose of the agreement." *Lopez, supra*, at ¶12. "Mere nominal, trifling, or technical departures will not result in a breach of contract; slight

12

departures, omissions, and inadvertencies should be disregarded." *Tucker v. Young*, 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, ¶25. Thus, contrary to appellants' argument, planting a flower or changing a window or door with similar materials would not result in a termination of the lease or an eviction because it does not involve a material rule violation.

**{¶51}** Further, contrary to appellants' argument, there is no evidence Troy Oaks selectively enforced the prior-approval rule. In *Bennington v. Austin Square, Inc.*, 5th Dist. Stark No. 2005 CA 00095, 2006-Ohio-75, the Fifth District noted that the rule requiring the replacement of fiberglass steps with wood steps when a resident sold the manufactured home and moved was only enforced against some of its residents. Thus, the Fifth District held the upgrade rule was unreasonable, arbitrary and capricious. *Id.* at ¶66.

**{¶52}** Here, appellants did not present any proof that the prior-approval rule was not equitably enforced. There is no evidence Troy Oaks ever failed to enforce the rule in circumstances such as those presented here where the owner did not obtain prior approval of an alteration resulting in a violation of the park's construction standards. The fact that appellants and two other residents made other changes without Troy Oaks' prior approval (including Ms. Miller's new *shingled* roof) and were not asked to undo them or evicted after Troy Oaks learned about them does not mean the prior-approval rule was selectively enforced because, unlike appellants' metal roof, those other changes complied with Troy Oaks' standards.

**{¶53}** We thus hold the trial court did not err in not finding the rule requiring prior approval was unreasonable or selectively enforced.

13

{¶54} Finally, appellants argue that because the prior-approval rule is unreasonable and was selectively enforced, Troy Oaks could not properly enforce it via a breach-of-contract claim by incorporating it in a lease with a no-waiver provision. However, since the trial court implicitly found the rule was not unreasonable or selectively enforced, Troy Oaks was entitled to pursue its eviction action based on appellants' material-rule violation and breach of the lease.

{¶55} For the reasons stated in this Opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Chardon Municipal Court is affirmed.


DIANE V. GRENDELL, J.,

THOMAS. R. WRIGHT, J.,

concur.